Local Panel. With the lawyers who are going to argue that case, please approach the bench to introduce yourself to the court. Good morning, I'm Mark Steiner, I'm the appellant, can you go up to the microphone please? Mark Stein for the petitioner. I'm Sarah Horstra for the City of Chicago. Caitlin Beulah for the board. Are you guys going to switch some times, have you worked it out among yourselves? Yes, we plan to split our time equally. And the appellant, are you going to reserve some time for rebuttal? How much time? Okay, let's proceed. If I may ask, how long are you anticipating each side, is it 15 minutes? 15 minutes. Okay. Okay, I guess this is superfluous, but may it please the Court, Mark Stein for the petitioner, ask State Council 31. Let me stop you for a minute. Your case seems to be based on the fact that somebody who considers responsible bidding, that that's not a discretionary type of thing. And not in this case, the evidence does not show that. Why is that? Okay, well, I see that we're engaging immediately. Okay, so I had to make a couple of preliminary points first, but let me just address what you asked. On page 6 of our appellate brief, we summarize the authority that these employees, SPS employees have, using the terms that were used by the only witness in this case. That was a witness for the city, Byron Whittaker. And he said that they produce tabulations, which is a mechanical term, and that they are responsible for determining whether requirements are met. In page R64, transcript page 62. Well, don't they also have to determine who is a responsible bidder? or senior procurement specialist would be doing is determining those requirements for bidding had been met to determine this is the low bidder and most responsible bidder. So Mr. Whittaker, who gave the only testimony in this case, did not say, a terminology that later came into the case from, I guess, the ALJ, did not say that the SPS employees weigh factors or consider factors. He did not use the word factor anywhere in his testimony. He did not use the word weigh anywhere in his testimony. He did not use the word consider anywhere in his testimony. He said they determined whether requirements had been met. He testified also about the, excuse me, templates that the SPS employees use, that they fill in, which are devised by other people and that they cannot change. And there was no indication whatsoever in the evidence of the extent to which the determination of lowest responsible bidder is a mechanical one based on filling in these templates or involves the exercise of the use of judgment. There was no evidence, first of all, there was no example ever given, you know, so-and-so said that this wasn't the most responsible bidder, or at least lowest responsible bidder because of some financial problem. No examples given. No explanation of the process that would allow anyone to determine whether this is managerial discretion or simply the mechanical application of rules. Do you have any case that supports that, that says this is what you have to do to sustain a burden of proof? Well, it's uncontested. Well, it either is yes or no. Do you have a case that says what you say? In a way, in a way. I mean, you either do or you don't. This is either a pencil or it's an elephant. I mean, it can't be anything else. It could be a deadly weapon, I suppose. Okay, so we cite to the County of Will case, you know, in which the board determined that there was insufficient evidence that these appointed managerial employees in that case, you know, exercised managerial discretion. It just hadn't been provided. The evidence had not been provided. There was much more evidence in that case than there is in this case. In this case, there is zero evidence. Now, Mr. Whitaker, on page 39 of the record, transfer page 37, the only place where he talks about what authority or what discretion the SPS employees have is Okay, so that, yeah, is where he was asked by his attorney, I'm sorry, by the city's attorney, it sounds like there's some kind of judgment that's here. It's not just simply determining if there's a certain number of documents contained in the bid response. Is that accurate? And he says, no, there is some judgment involved in terms of evaluating the documents on the information. That is it. That is the entire description of the extent of the authority of the SPS employee to determine the lowest responsible bidder. And I would note, first of all, you cannot determine from that statement if it's managerial discretion, what kind of judgment it is, and so forth. But even based on the language alone, there is some judgment involved. It's hardly a ringing endorsement of the high-level managerial discretion of these employees. So the, in the absence of evidence, the ALJ, in this case, cited two decisions in which cases were brought by unsuccessful bidders, suing to have their bid accepted, and for the proposition that there is discretion in identifying successful bidders. And in fact, these cases do indicate that a municipality has discretion in identifying the lowest responsible bidder, but they do not stand for the proposition, not at all, that the employees of the municipality who carry out its rules exercise managerial discretion. In fact, some of these cases involve completely mechanical processes that involve zero discretion, zero discretion on the part of municipal employees. It's the municipality that exercises its discretion by instituting these requirements, but the employees do not exercise any discretion at all in carrying them out. One example is the Affirmative Action Program in S. N. Nielsen Company, the Public Building Commission of Chicago, Supreme Court case 1980, which is cited by the ALJ, and which is a completely mechanical calculation of percentages and so forth, and it's done by the contractor, not even by the employees of the commission. So these cases certainly do not tell us that any employee who works for one of these agencies is exercising discretion, and certainly do not tell us that the SPS employees are exercising any discretion, and certainly not managerial discretion, in determining who is the lowest bidder. There's no evidence of that, and the frequent references by Mr. Whitaker to tabulation, tabulate, and templates would, if anything, indicate that it is not managerial discretion that is involved. Certainly, there is some discretion. Many employees have discretion. That does not make them managers. That does not mean that they are running the department. The beat cop has lots of discretion. The parking attendant even has discretion, park here or there. It has to be a certain level, a certain content, a certain gravity before you can say it's managerial discretion in running a department, and there's no evidence that that's the case here. Now, Exhibit E in this case, which is E5 in the record, is a managerial chart showing that this is a small department of approximately 100 employees, if all the vacancies were filled. And that these employees, which are asserted to be managerial, actually are at the bottom of the organizational chart, and that if they were determined to be managerial employees, then more than 50% of the bottom-ranked employees in their division would be managers, you know, not even counting all the people on top of them, who presumably are managers also. Not only that, but Mr. Whitaker testified that the procurement specialists, which is a position in the bargaining unit, do the same thing in the bidding process. It's the same job for them as for the senior procurement specialists. The senior procurement specialists have different duties, which were determined not to be managerial, which are different from the procurement specialists, but in the bidding process, which was determined to make them managerial, he said it's the same. So... Let me ask you this. If you're ready to pass your time and you want some time for rebuttal, do you want to reserve some time? I will reserve for rebuttal, thank you. Okay. Let's hear from the evidence. May it please the Court. The Board did not clearly err in accepting the ALJ's recommendation that the SPS employees be excluded from the bargaining unit on the basis that their functions are, their positions are managerial in nature. It's through these senior procurement specialists that the department... Ms. Hornsby, doesn't the senior procurement specialist, it's all guided by statute, right? What they can do, what they can't do. Would you agree with that? The departments, they're purchasing, there are statutes that govern the purchasing. Based upon those statutes, they really don't have a heck of a lot of leeway in how they go about their jobs. Is that correct? There are guidelines that prescribe how they do their jobs. They are the ones, though, who effectively make the decisions. The majority of procurement decisions come about through the competitive bidding process. So what would you point to to say that they have discretion that is exercised within their role as procurement specialists? Much of it comes in selecting bidders in the competitive bidding process. Now, there is, you know, it's a competitive bidding process, but it's not merely a matter of identifying the lowest bidder dollar-wise. Once the apparent lowest bidder is designated, then it's the responsibility of these employees to select the lowest responsible bidder. And that's where a lot of the discretion comes in because, as Mr. Whitaker testified, there are numerous factors that go into meeting that, you know, to making that determination. And the factors that have to be considered in that are inherently ones that call for the exercise of judgment and discretion on the part. Okay, so once they exercise their judgment and they find the lowest bidder, what is the review process for the procurement specialist? Isn't that reviewed by a supervisor? It is, but Mr. Whitaker testified that so the supervisor either, you know, gives thumbs up or thumbs down on that, and then it's passed on to the chief procurement officer, who's the final decision maker. So how much deference is given to the procurement officer's determination? A lot. In Mr. Whitaker's testimony, it was he said he nearly always accepts the recommendation of the senior procurement specialist as to the lowest responsible bidder, and then that the chief procurement officer agrees with that. So it really is the senior procurement officers are the ones who are making the determination of the lowest responsible bidder, and basically their role, they're carrying out the Department of Procurement's mission. That is what the Department of Procurement does is procure goods and services for the various user departments, and they're the ones who are carrying that out. And there's no dispute on that point, that they are the effective decision makers. The issue is really about what goes into their decision-making process and whether it's rote. And my opposing counsel had mentioned things like tabulations and templates and calculations, suggesting that it's sort of a rote process that's governed by these, and there are portions of the competitive bidding process that are governed in that way. The lowest apparent bidder obviously comes down to dollar figures. There are some things that by ordinance are factored in in a numerical way, you know, minority business enterprises. There might be a certain percentage for those things. But when it comes to the bidder's responsibility and factors like the bidder's financial capacity and responsibility, their record of past performance, what the city's dealings with bidders are, and whether, you know, that they appear that they can carry the job out in a timely matter. But are your arguments supported by the evidence? Yes, Your Honor. There was only one witness who testified. The witness did not go into very specific things and talk about factors, things of that nature. No, he testified that the senior procurement specialists, that they have something like 30 factors to consider in making these determinations of the lowest responsible bidder, that their recommendations are nearly always accepted, and that it is a matter that there is judgment that the senior specialists have to exercise in making these decisions. And the absence of evidence that the ALJ noted, that the union has seized on, was the absence of evidence that the specialists were constrained in some way in how they applied these various factors, when inherent in these types of factors is judgment and discretion. And it's going to vary from case to case, because the types of factors are things like the adequacy of the equipment. There are some cases where that matters a lot, and then there are going to be instances, types of purchasing decisions that don't involve equipment at all. There will be instances where time is of the essence, where another step in a project depends on something getting completed, and that's going to be a paramount consideration. And, you know, those decisions are left to the senior procurement specialist to make. So the absence of evidence in this case isn't that the employees exercise discretion, that they exercise judgment. It's merely this thing that the union seized on from the ALJ's decision, saying that there was not evidence that they are told how to weigh the various factors. And in that case, the absence of evidence, it's an absence of evidence that their discretion is constrained. It's the absence of evidence that they have discretion. So they have to follow these guidelines, whether they're told or not. I mean, they have certain guidelines that they have to follow. Isn't that a manner of telling them what they have to do and how they have to do it? They have to assess the responsibility of the bidder, and there are things that they have to consider, but they're, you know, it's not, a lot of these judgments are, they're not going to be obvious up or down decisions. Does this, you know, contractor, do they have an adequate workforce? Do they have adequate equipment? Are they financially capable so that they can, you know, complete the first stage of the project before they get a payment from the city? You know, these are things that the senior procurement specialists get experience dealing with these contractors to have, you know, a good sense of, is this the best bidder to go forward on this project? And in that sense, again, they are carrying out the mission of the procurement, Department of Procurement. And, you know, the test for whether an employee exercises executive and managerial functions includes things like, you know, where their job encompasses a major part of the agency's mission. And basically, you know, the agency here, the Department of Procurement, it runs through these employees. You know, another factor is whether an employee negotiates on behalf of the employer. There was also testimony that once a bid is accepted, you know, they negotiate terms with the bidder. Sometimes there's tweaking that needs to be done to the contracts. You know, and generally assuring that the department runs effectively, and that's what they do by working on behalf of the department by carrying this out. I just want to touch very briefly on the argument that the job duties of the senior procurement specialists, you know, that the notion that they're the same as other procurement specialists who are in the bargaining unit, that for one thing, the argument wasn't actually advanced in the brief on appeal. So we would argue that it's waived. It was raised below. The testimony was merely that their job duties are the same in the bidding process. There wasn't any elaboration on that, what it means. It's not clear that they really do the same things overall. But, you know, moreover, the ALJ recognized there's not evidence in the record about what the procurement specialist's duties are. There's nothing preclusive about the fact that those employees are in the bargaining unit. So we don't think that that's a relevant inquiry. I would agree to split our time. I haven't been keeping track of the time, so I hope I haven't intruded on counsel's time. If you have any other questions for me, I'd be happy to answer them. Thank you. Good morning, Your Honors. May it please the Court. Assistant Attorney General Caitlin Buell on behalf of the Board. The Board did not clearly err when it concluded, based on the uncontroverted evidence before it, that these senior procurement specialists were managers under Section 3J of the Labor Relations Act. The Board didn't clearly err when it concluded that these senior procurement specialists were managers because they predominantly engaged in executive and management functions. AFSCME is asking this Court to re-weigh the uncontroverted evidence on a clear error standard of review, but the uncontroverted evidence was that the specialist whittakers said that the SPXs used their own independent judgment to identify the lowest responsible bidder during competitive bidding. And that's on pages 39 to 40 and 64 of the record. But was there any testimony on how they do that? There wasn't testimony. However, there was evidence. On page E30, there were a variety of factors that the SPXs must consider, including financial capacity, past performance on past contracts, experience, adequacy of equipment, the ability to perform the contract. On page E31, the vendor's eligibility, giving living wages for employees, past allegations of price fixing, percentage of work hours that you need to allocate to women, city residents, and minorities. The list goes on. So it wasn't just the testimony. It was also the documentary evidence before it. This brings me to my next point, which is that AFSCME has mischaracterized the County of Will and an alleged requirement for specific examples. In County of Will, there were program managers who were responsible for administering program grants in the context of federal HUD regulations. And the evidence before the ALJ was that they were engaging in a very collaborative environment with multiple levels of review in which there were individuals who actually were directing how a decision was made. And the board agreed with the ALJ's conclusion that these program managers were not predominantly engaged in executive and management functions, but modified that decision. That was because the board concluded that, first, the mere existence of regulations does not mean that someone does not have discretion or lacks some sort of managerial discretion. And second, that an employer is not required to provide specific examples of managerial duties to meet its evidentiary burden. More specific examples, of course, are helpful, but they're not necessary, so long as the evidence accurately describes what an employee has done or is authorized to do. That's sufficient. Here, we differ from the County of Will because there was no collaborative process here whatsoever. There was no testimony that the SPSs were engaging in some sort of collaborative process. And the testimony that was there was purely uncontroverted. Whitaker's testimony was that the SPSs used their own judgment when evaluating the bid documents and information, weighing between 20 to 30 factors to make the determination. This wasn't a checkboxes situation. The very nature of weighing factors shows that they're evaluating one criterion over the other. In addition, the evidence that was presented was sufficient to support the Board's conclusion. The uncontroverted evidence showed that they were not instructed to assign any specific weight to any sort of particular factors or constrained by any formula. Had AFSCME wanted to, it could have presented its own evidence about the level of discretion or even about procurement specialists under Board Rule 1210.107, which recognizes that the hearings before the ALJ are non-adversarial in fact finding in which all parties may present evidence. And AFSCME didn't do so. It's unclear how on the record presented the Board could come to a contrary conclusion. In addition, the Board did not clearly err when it determined that the procurement specialists are managers because they are charged with the responsibility of effectuating management policies. They make those effective recommendations to the Chief Procurement Officer that are almost always accepted. And thus, if there are no other questions, we would ask that this Court affirm the Board's decision. Thank you. Thank you. Thank you, Your Honors. If I could just correct the statement of the record, the Counsel for the City said that the SPS employees negotiate. And, in fact, on page 56 of the transcript, the question was, they have no role in negotiating prices between the client and the vendor? Answer, in the bidding process, no. And the bidding process was the only process that was determined to be managerial. I would also repeat that it appears nowhere in the record, even though counsel used phrases like weight factors and so forth, that does not appear anywhere in the testimony of Mr. Whitaker. His, in I-64, his terminology is determine whether requirements were met. Was that asked in cross-examination, how they weigh the factors? No, I don't think so, because he never said they consider a number of factors and so there was no reason to cross-examine him about it. He never said there are these various subjective factors. You know, if the evidence was as Counsel for the City presented it, you know, if her testimony was the testimony of Mr. Whitaker, this would be a difficult case for us, a more difficult case, certainly. But all of the factors that she is talking about, which may require discretion, it's also possible that they do not require discretion because there are criteria, there are templates that make it a mechanical process in determining whether, for example, there is financial responsibility. The record does not show whether any of these requirements, as Whitaker accurately called them, are determined, you know, purely through these mechanical processes or through some kind of discretion. And if so, what kind of discretion is used? There's an absence of evidence in the record, and that's why the city has not met its burden. And I agree that if it were a managerial decision, what these SBS employees do in producing this tabulation, then yes, they're almost always accepted. That's what the evidence shows. But the evidence does not indicate that they use managerial discretion in producing the tabulation and, therefore, the decision of the board should be reversed. And so if there are no questions, thank you. I want to thank the parties and lawyers for excellent briefs and excellent arguments, and we'll take the case under advice.